PETROLITE CORPORATION,
Plaintiff–Appellant,

v.

BAKER HUGHES INCORPORATED and Baker Performance Chemicals Incorporated, Defendants–Appellees.

No. 95–1447.

United States Court of Appeals,
Federal Circuit.

Sept. 27, 1996.

Rehearing Denied; Suggestion for Rehearing In Banc Declined
Nov. 5, 1996.

James H. Riley, II, Pravel, Hewitt, Kimball & Krieger, Houston, TX, argued, for plaintiff-appellant.

David G. Mangum, Parsons, Behle & Latimer, Salt Lake City, UT, argued, for defendants-appellees. With him on the brief was C. Kevin Speirs.

Before MAYER, MICHEL, and BRYSON, Circuit Judges.

MAYER, Circuit Judge.

Petrolite Corporation appeals the judgment of the United States District Court for the Western District of Oklahoma, holding on summary judgment that United States Patent No. 4,978,512, is invalid under 35 U.S.C. § 102(b). *Petrolite Corp. v. Baker Hughes Inc.*, Civ. Action No. Civ–94–311 (W.D.Ok. Mar. 20, 1995) (final judgment order). Because we agree with the district court that Petrolite has not raised a genuine issue as to any material fact and that Baker Hughes Inc. and its subsidiary Baker Performance Chemicals Inc. (Baker) are entitled to judgment as a matter of law, we affirm.

### Background

In mid–1987, Quaker Petroleum Chemicals Co. began experimenting with methods for reducing the amount of hydrogen sulfide, a corrosive and toxic gas, in hydrocarbon streams such as oil or natural gas. The chemicals used in this process are called "hydrogen sulfide scavengers." In November 1987, after experiencing difficulties with various methods in cold weather, a Quaker

employee developed the method claimed in the '512 patent, in which formaldehyde and monoethanolamine ("MEA") are mixed to form a reaction product used as a hydrogen sulfide scavenger. Quaker applied for the patent on December 23, 1988. Petrolite purchased the rights to the '512 patent from Quaker in 1993, following its reexamination.

Petrolite sued Baker for patent infringement on March 4, 1994. Baker moved for summary judgment of invalidity, arguing that Quaker had publicly used or sold the claimed invention non-experimentally more than one year before the date it filed for the patent. The district court granted Baker's motion, and Petrolite appeals.

### Discussion

 The issue is whether the district court erred in granting Baker's motion for summary judgment of invalidity. We review a district court's grant of summary judgment *de novo*. *Meyers v. Asics Corp.*, 974 F.2d 1304, 1306, 24 USPQ2d 1036, 1037 (Fed.Cir. 1992). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1274, 35 USPQ2d 1035, 1038 (Fed.Cir.1995).

 Under 35 U.S.C. § 102, a patent is invalid if "the invention was … in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b) (1994). Quaker filed for its patent on December 23, 1988. Thus, the critical date for the public use and on sale inquiry is December 23, 1987. If Quaker used its invention in public, sold it, or offered it for sale within the meaning of the statute before that date, its patent is invalid. Public use includes "any use of [the claimed] invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor." *In re Smith*, 714 F.2d 1127, 1134, 218 USPQ 976, 983 (Fed.Cir. 1983).

 Whether a public use has occurred is a question of law, *Barmag Barmer Maschinenfabrik AG v. Murata Mach. Ltd.*, 731 F.2d 831, 836–37, 221 USPQ 561, 565–66 (Fed.Cir.1984), and "[t]his court has emphasized that the totality of the circumstances must be considered in determining whether a particular event creates an on-sale or public use bar." *U.S. Environmental Prods. Inc. v. Westall*, 911 F.2d 713, 716, 15 USPQ2d 1898, 1901 (Fed.Cir.1990); *see also Tone Bros., Inc. v. Sysco Corp.*, 28 F.3d 1192, 1198, 31 USPQ2d 1321, 1324 (Fed.Cir.1994); *TP Labs., Inc. v. Professional Positioners, Inc.*, 724 F.2d 965, 971, 220 USPQ 577, 582 (Fed. Cir.1984). The policies underlying the bar, such as "allowing the inventor a reasonable amount of time … to determine the potential economic value of a patent" and "prohibiting the inventor from commercially exploiting the invention for a period greater than the statutorily prescribed time," are also relevant to the public use determination. *Tone Bros.*, 28 F.3d at 1198, 31 USPQ2d at 1324–25. On summary judgment, once an alleged infringer presents facts sufficient to establish a *prima facie* case of public use, it falls to the patent owner to come forward with some evidence raising a genuine issue of material fact to the contrary. *Sinskey v. Pharmacia Ophthalmics, Inc.*, 982 F.2d 494, 498, 25 USPQ2d 1290, 1293 (Fed.Cir.1992); *U.S. Environmental Prods.*, 911 F.2d at 716, 15 USPQ2d at 1901; *Harrington Mfg. Co. v. Powell Mfg. Co.*, 815 F.2d 1478, 1482, 2 USPQ2d 1364, 1367 (Fed.Cir.1986).

 Petrolite's central argument is that the district court abused its discretion by enforcing its local rules and deeming Baker's statement of facts admitted because Petrolite failed to contest them. The rule provides that "[a]ll material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." Local Rule 14(b).* To avoid having the movant's facts deemed admitted, the rule provides that the brief in opposition must "begin with a section that contains a concise statement of

---

* These requirements are now contained in Local Rule 56.1(c) (Mar. 1, 1996). For the Eastern District of Oklahoma, they are still contained in Local Rule 14(b).

material facts as to which the party contends a genuine issue exists." The rule also requires that "[e]ach fact in dispute ... be numbered and ... refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, ... state the number of the movant's fact that is disputed." *Id.*

 Under Rule 83 of the Federal Rules of Civil Procedure, "[e]ach district court, acting by a majority of judges, may, after giving appropriate notice and an opportunity for comment, make and amend rules governing its practice.... A local rule takes effect on the date specified by the district court and remains in effect unless amended by the court or abrogated by the judicial council of the circuit." Fed.R.Civ.P. 83(a)(1) (1995). Local rules have the force of law, *Weil v. Neary*, 278 U.S. 160, 169, 49 S.Ct. 144, 148, 73 L.Ed. 243 (1929), and "a district court's construction of its own rule" will be reversed only if "the appellate court is convinced that the district court has misconstrued its own rule." 12 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 3153 (1973) (citing, for example, *Woodham v. American Cystoscope Co.*, 335 F.2d 551 (5th Cir.1964)). Petrolite did not comply with the rule, and the district court's actions in enforcing it were proper.

 Petrolite also argues that the court erred in invalidating all of the claims, because only four claims were at issue. However, the pleadings and other court documents show that Baker argued that all of the claims were invalid. For example, in Baker's answer to Petrolite's complaint, Baker alleges that "U.S. patent 4,978,512 is invalid and unenforceable because of failure to comply with one or more of the provisions of Title 35, United States Code, including 35 U.S.C. §§ 102, 103, and 112." The final pretrial order, which both parties approved, states that "Baker contends that Petrolite is entitled to nothing because ... every claim of the '512 patent is invalid...." Thus, Petrolite cannot now contend that these claims were not in dispute.

When analyzed in light of the facts that the district court properly deemed admitted, Petrolite's substantive arguments are without merit. It does not contest that the W–3053 chemical was publicly used and sold prior to the critical date. Rather, it argues only that these pre-critical date uses and sales were experimental "because the chemical was not known to work for its intended purpose and ... the transaction[s] took place as part of a program of experimentation to determine if the chemical would work for that purpose."

 "The use of an invention by the inventor himself, or of any other person under his direction, by way of experiment, and in order to bring the invention to perfection, has never been regarded as [a public] use." *City of Elizabeth v. American Nicholson Pavement Co.*, 97 U.S. 126, 134, 24 L.Ed. 1000 (1877); *TP Labs.*, 724 F.2d at 971, 220 USPQ at 582. "The burden was on [Petrolite] to present some evidence that would raise a genuine issue of material fact over [the] allegation of experimental use." *Sinskey*, 982 F.2d at 497, 25 USPQ2d at 1293. "To establish that an otherwise public use or sale does not run afoul of section 102(b), it must be shown that the activity was 'substantially for purposes of experiment.'" *Id.* at 498, 982 F.2d 494, 25 USPQ2d at 1294 (quoting *Baker Oil Tools, Inc. v. Geo Vann, Inc.*, 828 F.2d 1558, 1564, 4 USPQ2d 1210, 1214 (Fed.Cir.1987)). Thus, Petrolite had to present admissible evidence raising a genuine issue of material fact that "the primary purpose of the work was experimental." *Baker Oil Tools*, 828 F.2d at 1563, 4 USPQ2d at 1213.

 Experimental use is a question of law to be analyzed based on the totality of the surrounding circumstances. *Tone Bros.*, 28 F.3d at 1198, 31 USPQ2d at 1324. "Objective evidence such as the length of the test period, whether payment was made for the device, whether there was a secrecy agreement, whether progress reports were kept, whether someone other than the inventor conducted the experiments, and the overall number of tests may be considered." *Sinskey*, 982 F.2d at 498, 25 USPQ2d at 1294; *In re Brigance*, 792 F.2d 1103, 1108, 229 USPQ 988, 991 (Fed.Cir.1986); *TP Labs.*, 724 F.2d at 971–72, 220 USPQ at 582. Here, the district court analyzed the relevant evidentia-

ry factors and correctly concluded that Petrolite had not raised a material dispute of fact that the pre-critical date uses and sales were primarily for experimental purposes.

Petrolite argues that the reaction product had not been shown to work for its intended purpose prior to the critical date because the inventors were still testing it to make sure that it would not form solids as a by-product. However, the undisputed evidence was that, as of December 3, 1987, Quaker had arrived at the formulation that was successful in reducing the amount of hydrogen sulfide to acceptable levels in its intended environment, even in cold weather. "[T]he thrust of the on-sale inquiry is whether the inventor thought he had a product which could be and was offered to customers, not whether he could prevail under the technicalities of reduction to practice...." *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1187 n. 5, 25 USPQ2d 1561, 1570 n. 5 (Fed.Cir.1993).

*Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544, 551, 16 USPQ2d 1587, 1592 (Fed.Cir.1990), held that determining whether an invention is "operable for its intended purpose in its intended environment" is not a statutory public use. In that case, the district court had found that the patent at issue was not invalid because of the on sale or public use bar. This court affirmed, noting that the patentee "did nothing to lead the public to believe that its ... invention was in 'the public domain;'" that the patentee "did not attempt to extend the patent term by commercially exploiting its invention more than one year before it filed a patent application;" and that the patentee's actions were "entirely consistent with the policy 'favoring prompt and widespread disclosure of inventions.'" 917 F.2d at 550, 16 USPQ2d at 1587. We noted that the invention was "specifically designed to withstand year around weather," and as such, "[p]rior to testing in the winter environment, there really was no basis for confidence by the inventor that the invention would perform as intended, and hence no proven invention to disclose." *Id.*

Here, however, it is not the case that Quaker had not used its invention in its intended environment; to the contrary, Quaker had tested the method in its intended environment and it had worked. There is no evidence in the record that the scavenger clogged the pipes or lost effectiveness at eliminating hydrogen sulfide in very cold temperatures; there is only subjective evidence that the inventors were not completely satisfied that it would not suffer from any such defects. For example, Petrolite relies on a memorandum dated March 22, 1988, to argue that Quaker envisioned continued testing for weeks or months to determine whether W–3053 would cause solids to form and clog the system. However, another Quaker memorandum indicated that it believed that it had a marketable product as of December 3, 1987. Moreover, the record evidence points to the conclusion that, even if the inventors felt that additional field tests were necessary to verify the product's reliability, Quaker was sufficiently satisfied with it to promote and sell it to a number of customers. Petrolite's assertions to the contrary cannot create a genuine issue of material fact. "The subjective belief of inventors ... must be weighed against objective evidence which indicates otherwise." *U.S. Environmental Prods.*, 911 F.2d at 717, 15 USPQ2d at 1902. "[I]f a mere allegation of experimental intent were sufficient, there would rarely if ever be room for summary judgment based on a true 'on sale' defense under 35 U.S.C. § 102(b)." *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1150, 219 USPQ 13, 17 (Fed.Cir. 1983); *see also Sinskey*, 982 F.2d at 499, 25 USPQ2d at 1294 ("[A]fter-the-fact testimony of an inventor's subjective 'experimental intent' is entitled to minimal weight.") (citing *In re Smith*, 714 F.2d at 1135, 218 USPQ at 983).

Petrolite also argues, *inter alia*, that the district court erred in concluding that Quaker did not maintain exclusive control over the testing of W–3053. We disagree. The district court recognized that, "[w]hile control is not determinative, it is an important factor." *U.S. Environmental Prods.*, 911 F.2d at 717, 15 USPQ2d at 1902; *see also Lough v. Brunswick Corp.*, 86 F.3d 1113, 1120, 39 USPQ2d 1100, 1105 (Fed.Cir.1996) ("The last factor of control is critically important, be-

cause, if the inventor has no control over the alleged experiments, he is not experimenting.").

The evidence indicated that the security measures taken at the site were standard measures taken by Sohio, not requirements imposed by Quaker.** While these security measures may have been important to Quaker in deciding with whom it would do business, there was no evidence that Quaker required such measures. Moreover, there was no evidence that Quaker had entered into any secrecy agreement with Sohio, and Sohio officials testified that they were free to analyze the reaction product if they wished to do so. The district court also found that, although there was "strong evidence" that Quaker regarded the product as experimental, there was no evidence that Quaker informed purchasers that the invention was experimental. The purchasers testified that the sales were ordinary commercial transactions. "The experimental use doctrine operates in the inventor's favor to allow the inventor to refine his invention or to assess its value relative to the time and expense of prosecuting a patent application. If it is not the inventor or someone under his control or 'surveillance' who does these things, there appears to us no reason why he should be entitled to rely upon them to avoid the statute." *In re Hamilton*, 882 F.2d 1576, 1581, 11 USPQ2d 1890, 1894 (Fed.Cir.1989); *see also Hycor Corp. v. Schlueter Co.*, 740 F.2d 1529, 1535, 222 USPQ 553, 557 (Fed.Cir. 1984); *In re Smith*, 714 F.2d at 1136, 218 USPQ at 983.

 Petrolite makes other arguments that the district court erred in analyzing the evidence and reaching the conclusion that the '512 patent is invalid. For example, Petrolite asserts that "it is noteworthy that Quaker substantially discounted the price charged for the chemical to compensate Sohio for the risk it was bearing on a '100% experimental' product." However, "[a] patent owner may have created an on-sale bar despite *losing* money on a sale." *U.S. Environmental Prods.*, 911 F.2d at 717, 15

USPQ2d at 1902. Thus, Quaker's profit level is not determinative. We have considered this and the other arguments but conclude they are without merit.

### Conclusion

Accordingly, the judgment of the United States District Court for the Western District of Oklahoma is affirmed.

*AFFIRMED.*

---

** Petrolite misleadingly suggests otherwise in its brief, by selectively quoting from Talley's video-taped deposition.