**LITTON SYSTEMS, INC.,**
**Plaintiff–Appellant,**

v.

**HONEYWELL INC., Defendant–**
**Appellee.**

**No. 00–1241.**

United States Court of Appeals,
Federal Circuit.

Feb. 5, 2001.

Rehearing Denied March 23, 2001.

---

John G. Roberts, Jr., Hogan & Hartson L.L.P., of Washington, DC, argued for plaintiff-appellant. With him on the brief was Catherine E. Stetson. Of counsel on the brief were Frederick A. Lorig, and Sidford L. Brown, Bright & Lorig of Los Angeles, CA; Rory J. Radding, Pennie & Edmonds L.L.P., of New York, NY; and Stanton T. Lawrence, III, and Carl P. Bretscher, Pennie & Edmonds L.L.P., of Washington, DC.

Richard G. Taranto, Farr & Taranto, of Washington, DC, argued for defendant-appellee. Of counsel on the brief were Gregory A. Long and Kent R. Raygor, Sheppard Mullin Richter & Hampton, of Los Angeles, CA; and John Donofrio, Honeywell International, Inc., of Morristown, NJ. Of counsel on the brief was George E. Quillin, Foley & Lardner, of Washington, DC.

Before MAYER, Chief Judge, RADER and BRYSON, Circuit Judges.

Opinion for the court filed by Chief Judge MAYER. Circuit Judge BRYSON concurs in part and dissents in part.

MAYER, Chief Judge.

Litton Systems, Inc. (Litton) appeals the judgment of the United States District Court for the Central District of California granting summary judgment and judgment as a matter of law (JMOL) that Honeywell, Inc. (Honeywell) did not infringe Litton's United States Reissue Patent No. 32,849 ('849 reissue) directed to a "method for fabricating multi-layer optical films," and JMOL for Honeywell on Litton's state law tort claims of intentional interference with contractual relations and intentional interference with prospective economic advantage. See Litton Sys., Inc. v. Honeywell, Inc., No. CV 90–0093 MRP (C.D.Cal. Jan. 31, 2000). Because, in light of our recent decision in Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd., 234 F.3d 558, 56 USPQ2d 1865 (Fed. Cir.2000), there was no infringement under the doctrine of equivalents as a matter of law, and because the district court improperly resolved genuine issues of material fact that should have been determined by a jury regarding the state law claims, we affirm-in-part, reverse-in-part, vacate-in-part, and remand.

## Background

The factual background to this case is fully set out in Litton Sys., Inc. v. Honeywell, Inc., 87 F.3d 1559, 39 USPQ2d 1321 (Fed.Cir.1996) (Litton I), and will be discussed here only to the extent necessary to the current appeal. In 1979, Litton obtained United States Patent No. 4,142,958 ('958 patent) claiming a sputtering process for making multiple layer optical films using an ion beam, without limitation to a particular ion beam source. It sought reissue in 1985 because the '958 patent was invalid for obviousness, and proposed an amendment requiring that the multiple layers have different indices of refraction. The examiner twice rejected this amendment as obvious over the prior art, including that disclosed in the '958 patent. Litton argued specifically that (1) it used a Kaufman-type ion beam source, (2) it obtained an unexpected result from the use of the Kaufman-type source to produce the required ion beam, and (3) its claims were limited "only to the Kaufman-type ion beam guns" not "to any other ion beam gun but the Kaufman gun." The examiner conditioned allowance on Litton's amendment of its claims to limit them to Kaufman-type ion beam sources, and the '849 reissue was issued following the required amendment.

In 1981, before the events just described, Anthony Louderback, one of the co-inventors of the '958 patent, left his employment at Litton to form his own optical coating company, Ojai Research,

Inc. (Ojai). Louderback continued to work with Litton under an exclusive consulting agreement that gave Litton ownership of any inventions, developments, or discoveries he made based on the licensed process and forbade him from disclosing the patented technology. He also entered a licensing agreement with Litton that permitted him to practice the '958 patent but forbade him from using the patented technology to produce mirrors for anyone other than Litton. After the consulting contract expired in 1983, from 1984 to 1990 Louderback provided Honeywell, one of Litton's competitors, with mirrors made using the patented method.

In 1990, Litton sued Honeywell, Louderback, and Ojai for infringement of the '849 reissue. Litton asserted that Louderback had infringed the '849 reissue and breached their licensing and consulting agreements. Litton later amended the complaint to sue Honeywell for intentional interference with contractual relations and intentional interference with prospective economic advantage. Ultimately, Honeywell and Litton went to trial. In the special verdict form, the jury reported that (1) Honeywell did not prove any of the asserted claims invalid, (2) Litton had proved the asserted claims infringed, and (3) Litton had met its burden on the state law claims.

This case now returns to us for the third time. Our first judgment, *Litton I*, was vacated and remanded by the Supreme Court of the United States for reconsideration in light of *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146, 41 USPQ2d 1865 (1997). *Honeywell, Inc. v. Litton Sys., Inc.*, 520 U.S. 1111, 117 S.Ct. 1240, 137 L.Ed.2d 323 (1997) (GVR order). Next, in *Litton II*, we construed "Kaufman-type ion beam source" to encompass any ion beam gun with the stated components: a hot-wire cathode, an anode, grids, and magnets. *Litton Sys., Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1455, 46 USPQ2d 1321, 1324 (Fed.Cir.1998). Based on this construction, we affirmed that Honeywell's hollow cathode and radio frequency (RF)

ion beam processes do not literally infringe the '849 reissue. We vacated and remanded for consideration of infringement under the doctrine of equivalents pursuant to the proper claim construction. *Id.* Because the jury may have relied on patent infringement as the wrongful means supporting the state law torts, we reversed JMOL, vacated the jury verdict, and remanded for further proceedings in accordance with state law. *Id.* at 1465, 46 USPQ2d at 1333.

On remand from *Litton II*, the district court granted summary judgment and JMOL of non-infringement of the '849 reissue. It held that the prosecution history precludes infringement under the doctrine of equivalents for Honeywell's hollow cathode ion beam source and the all-elements rule precludes infringement under the doctrine of equivalents for either the Honeywell hollow cathode or RF ion beam sources. The court also granted JMOL for Honeywell on the state law claims because Litton failed to establish the requisite elements. Litton appeals.

### Discussion

"We review a district court's grant of summary judgment *de novo.*" *Vanmoor v. Wal–Mart Stores, Inc.*, 201 F.3d 1363, 1365, 53 USPQ2d 1377, 1378 (Fed.Cir. 2000) (citing *Petrolite Corp. v. Baker Hughes, Inc.*, 96 F.3d 1423, 1425, 40 USPQ2d 1201, 1203 (Fed.Cir.1996)). "Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* Summary judgment is improper "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v.. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, all of the nonmovant's evidence is to be credited, and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255, 106 S.Ct. 2505. "We review a trial court's decision on a

motion for judgment as a matter of law following a jury verdict by reapplying its own standard of review." *Tec Air, Inc. v. Denso Mfg. Mich., Inc.,* 192 F.3d 1353, 1357, 52 USPQ2d 1294, 1296 (Fed.Cir. 1999).

"[A] narrowing amendment made for any reason related to the statutory requirements for a patent will give rise to prosecution history estoppel with respect to the amended claim element." *Festo,* 234 F.3d at 566, 56 USPQ2d at 1870. In support of the patentability of the claims with the "ion beam source" limitation, Litton initially argued that "the term 'ion beam source' in its original claims could not 'properly be construed to refer to any other ion beam gun but the Kaufman gun.'" *Litton II,* 140 F.3d at 1453, 46 USPQ2d at 1323. Later, Litton narrowed its claims by amending the term "ion beam source" to read "Kaufman-type ion beam source." It did so in direct response to a rejection under 35 U.S.C. § 112, ¶ 2 that the examiner issued because Litton did not claim what it regarded as its invention. *Id.* at 1461, 46 USPQ2d at 1330. A "regards his invention" rejection is clearly related to the section 112, ¶ 2 statutory requirement for a patent, and, therefore, Litton's narrowing amendment gives rise to prosecution history estoppel. *See id.; Festo,* 234 F.3d at 566, 56 USPQ2d at 1870.

"When a claim amendment creates prosecution history estoppel with regard to a claim element, there is no range of equivalents available for the amended claim element. Application of the doctrine of equivalents to the claim element is completely barred (a 'complete bar')." *Festo,* 234 F.3d at 569, 56 USPQ2d at 1872. In *Festo,* we observed that *Litton II* had followed the flexible bar approach, *id.* at 574, 56 USPQ2d at 1877, and we expressly repudiated that approach. *Id.* at 569, 56 USPQ2d at 1872. The law of the case is a discretionary judicial doctrine that precludes reconsideration of an issue decided at an earlier stage of litigation unless exceptional circumstances exist. One such

circumstance is when controlling authority has since made a contrary decision of law applicable to the issue or when the prior decision was clearly wrong and would work a substantial injustice. *Mendenhall v. Barber–Greene Co.,* 26 F.3d 1573, 1581, 31 USPQ2d 1001, 1007 (Fed.Cir.1994). Because we have adopted a contrary rule of law regarding the scope of prosecution history estoppel for amended claim limitations, the law of the case doctrine does not preclude us from applying the complete bar adopted *en banc* in *Festo.* *See id.*

Our opinions in *Hughes Aircraft Co. v. United States,* 86 F.3d 1566, 39 USPQ2d 1065 (Fed.Cir.1996) (Hughes XIII) and *Hughes Aircraft Co. v. United States,* 140 F.3d 1470, 46 USPQ2d 1285 (Fed.Cir.1998) (Hughes XV) do not lead to a different result. *Hughes XIII* explicitly held that *Hughes Aircraft Co. v. United States,* 717 F.2d 1351, 219 USPQ 473 (Fed.Cir.1983) (Hughes VII) was entirely consistent with our intervening *en banc* decision in *Pennwalt Corp. v. Durand–Wayland,* 833 F.2d 931, 4 USPQ2d 1737 (Fed.Cir.1987). *Hughes XV* held that *Warner–Jenkinson* provides no basis to alter the decision in *Hughes VII* because the court properly applied the all-elements rule. 140 F.3d at 1475, 46 USPQ2d at 1289. In neither case was there controlling authority that in the interim had made a contrary decision of law applicable to the relevant issue. We are aware of no decision of this court that has applied the law of the case in the face of a relevant change in controlling legal authority. Under *Festo's* complete bar rule, Litton is estopped from claiming any equivalents to the "Kaufman-type ion beam gun" limitation in the disputed claims of the '849 reissue. *Festo,* 234 F.3d at 569, 56 USPQ2d at 1872. Neither of the accused devices literally possesses a Kaufman-type ion beam gun, and Litton is completely barred as a matter of law from asserting that the accused devices meet the "Kaufman-type ion beam gun" limitation under the doctrine of equivalents. The district court correctly granted JMOL

of non-infringement of the '849 reissue under the doctrine of equivalents.

Based on the JMOL of non-infringement, Litton cannot rely on the patent infringement claims to support the wrongful means element of its state tort claims. "Although an appellate court must sustain a jury verdict against a JMOL if there are any reasonable grounds for the verdict, an appellate court must also vacate a jury verdict and remand for a new trial if a jury may have relied on an impermissible basis in reaching its verdict." *Litton II*, 140 F.3d at 1465, 46 USPQ2d at 1333 (citations omitted). Having entered JMOL of non-infringement under the doctrine of equivalents, the district court should have submitted the tort claims to a jury to resolve the factual issue of wrongful means. Because the JMOL ruling on the tort claims impermissibly decided disputed issues of material fact, we reverse the trial court's grant of JMOL, vacate the jury's verdict, and remand for further proceedings in accordance with state law.

### Conclusion

Accordingly, the judgment of the United States District Court for the Central District of California is affirmed-in-part, reversed-in-part, vacated-in-part, and remanded.

### COSTS

Each party shall bear its own costs.

AFFIRMED–IN–PART, REVERSED–IN–PART, VACATED–IN–PART, AND REMANDED

BRYSON, Circuit Judge, concurring in part and dissenting in part.

I agree with the court that the doctrine of equivalents is inapplicable in this case, and I therefore concur in the court's decision to affirm the district court's grant of judgment of non-infringement of the '849 reissue patent. I dissent, however, from the court's decision to reverse the district court's judgment with respect to the two state law tort claims, for essentially the same reasons set forth in my dissenting opinion when this case was first before the court. *See Litton Sys., Inc. v. Honeywell, Inc.,* 87 F.3d 1559, 1581–84, 39 USPQ2d 1321, 1337–39 (Bryson, J., dissenting). I would affirm the district court in all respects.

Litton's claim of intentional interference with contractual relations is based on contracts between Litton and Ojai Research, Inc., a company owned by Anthony Louderback, a former Litton employee and one of the inventors of the '958 patent. In 1981, Ojai and Litton executed two agreements governing their relationship and Louderback's use of the '958 patent process. The first agreement, the "Consulting Services Contract," was in effect between 1981 and 1983. The other agreement, the "Technical Assistance and License Agreement" (License Agreement), which had a 15 year duration, prohibited Louderback from using the patented process to make ring laser gyroscope mirrors for anyone but Litton.

Because the Consulting Services Contract expired in February 1983, at least one year before Honeywell contacted Louderback to obtain mirrors, the only agreement that is at issue here is the License Agreement. The License Agreement identifies the Consulting Services Contract as a separate agreement and does not purport to extend the terms of the Consulting Services Contract past February 1983. The district court noted that the only conduct by Louderback that Litton asserted as breaching the License Agreement was Louderback's alleged infringement of the reissue patent and his use of the sliding-target mechanism to make mirrors for Honeywell in 1985. Because the district court properly concluded that no infringement occurred, any breach of the License Agreement must be based on Louderback's use of the sliding-target mechanism.

Use of the sliding-target mechanism did not breach the License Agreement. It is not among the specifically enumerated items of "Technical Information" that

Schedule B of the agreement identifies as proprietary to Litton, and it was not shown to be a design change based on protected information that would constitute a "Modification and Improvement" under the agreement. The License Agreement makes clear that it does not reach "completely new or different designs."

There is also no evidence that the sliding-target mechanism became Litton's property pursuant to the Consulting Services Contract. The Consulting Services Contract provides that "Litton shall have all rights ... in all inventions, developments, and discoveries (whether or not patented) which Consultant may conceive or make ... during any work by Consultant for Litton." Both Litton and Louderback, however, recognized that even during the two-year consulting period Louderback would be doing independent work, and the Consulting Services Contract does not reach developments made by Louderback working independently. Litton did not prove that the sliding-target mechanism was developed during any work for Litton. Louderback testified that he regarded the sliding-target mechanism as his own property, and that he maintained it separately from the Litton process that he operated under license from Litton. Moreover, the mechanism had been previously disclosed in a 1977 patent and was therefore publicly known.

Litton also contends that Louderback breached his contractual obligations when he failed to disclose certain improvements in the mirror-making process to Litton. The record, however, contains no evidence that Honeywell induced Louderback not to disclose the information in question to Litton. Rather, the record suggests only that Louderback did not disclose that information to Litton because he believed it to be his own trade secret.

Litton's second tort claim, interference with prospective economic advantage, fails because the record does not contain substantial evidence that Honeywell used "wrongful means," as is required by that tort. Both the district court and this court in the first appeal determined that the alleged wrongful means were either an act of infringement or an inducement to breach Louderback's contractual obligations to Litton. See 87 F.3d at 1575, 39 USPQ2d at 1332. We have now held that no infringement occurred and, as explained above, the record fails to show that there was any inducement to breach. The "interference" claim is therefore unsupported by the evidence at trial.

Aside from the issue of wrongful means, the interference tort also requires a showing that Honeywell intentionally acted to disrupt Litton's business relationship with Louderback. This court in the first *Litton* case found evidence of that conduct *only* in the acts of infringement and intentional interference with contractual relations between Louderback and Litton. See 87 F.3d at 1575, 39 USPQ2d at 1331. As neither of those acts has been proved, the interference tort fails on that basis as well.

Accordingly, the district court was correct in entering judgment as a matter of law on the two state tort claims; I therefore dissent from this court's decision to reverse that portion of the district court's judgment.